Jasen, J.
At issue on this appeal is the validity of the action of the State Commissioner of Health in limiting Medicaid reimbursement rates paid to proprietary nursing homes for services rendered to publicly assisted patients.
Section 2807 (subd. 3) of the Public Health Law empowers the Commissioner of Health to certify to the Superintendent of Insurance and the State Director of the Budget that the proposed rate schedules for the nursing homes are reasonably related to the cost of producing such services.[1] Pursuant to this authority, the Commissioner enacted regulations which required the nursing home rates to be individually determined, which limited the rates to 50% of the weighted average adjusted in-patient cost at proprietary hospitals in the State, and which provided a procedure to request a modification of the rates if warranted by a *113 change in economic status. (10 NYCRR 770.2[b], [h] [2], [m], [since repealed].)
Petitioner, who owns and operates the Florence Nightingale Nursing Home, located in the Upper East Side in Manhattan, commenced this proceeding to review a determination of the Commissioner limiting Medicaid reimbursement for nursing home services rendered to publicly assisted patients. The Commissioner originally established petitioner’s reimbursement rate to be $21 per day, effective January 8, 1968, and increased this amount to $24 per day on September 30, 1968. Petitioner made no attempt to seek judicial review of these determinations. As a consequence of section 770.2([h] [2]), the Commissioner determined the weighted average adjusted in-patient daily cost at proprietary hospitals to be $58 per day.[2] Thus, the maximum reimbursement rate for publicly assisted patients at proprietary nursing homes for the 1968-69 period was limited to $29.[3]
Thereafter, petitioner commenced this proceeding on June 26, 1969, contending that his costs exceeded the rates fixed by the Commissioner, and, thus, respondents’ actions in limiting his reimbursement rate to 50% of the daily average cost in proprietary hospitals was arbitrary and capricious. Special Term found the rule to be a reasonable and valid exercise of the Commissioner’s discretion and dismissed the petition herein. On appeal, the Appellate Division, one Justice dissenting, reversed. The court was of the opinion that the Commissioner’s actions “ in failing to comply with the statutory directive ” (Public Health Law, § 2807, subd. 3) that the “ rates shall be individually determined, * * * amounted to the assumption of powers in excess of those conferred upon it by law.” Justice McNally, in his dissent, stated that the Commissioner could set a maximum reimbursement rate in light of his experience that efficiently operated nursing homes do not exceed the fixed rate. We are in agreement with the dissent below and conclude that the order should, therefore, be reversed and the petition dismissed.
Initially, it should be noted that contrary to the views expressed by the majority below, there is no statutory requirement that the reimbursement rates be individually determined. *114 The statute (Public Health Law, § 2807, subd. 3, then in effect) only required that the Commissioner certify that the rate schedules ‘ ‘ are reasonably related to the costs of providing such service.” The only requirement that this reasonably related cost be individually determined is the Commissioner’s own rule (§ 770.2 [b]). However, the Commissioner has also determined (§ 770.2 [h] [2]) that when these costs exceed 50% of the average daily cost of proprietary hospital care, the rates are not reasonable and, consequently, there will be no individual determination. Thus, there is no inherent conflict between this latter regulation and the statute. Neither is there any inherent conflict between the two regulations. They may be read together to require that rates be individually determined unless they exceed this 50% guideline.
Consequently, the crucial question presented is whether the regulation limiting the reimbursement rates is a reasonable exercise of the Commissioner’s authority granted under section 2807 (subd. 3) of the Public Health Law. His determination arrived at by a broad application of specific statutory terms is not to be disturbed if it has a reasonable basis and is not arbitrary or capricious. (Matter of Park East Land Corp. v. Finkelstein, 299 N. Y. 70, 75; see Matter of Fink v. Cole, 1 N Y 2d 48, 53.) Moreover, where a regulation is not inconsistent with a statute and does not exceed it, the Commissioner’s interpretation of the regulation will be controlling and will not be disturbed in the absence of weighty reasons. (Matter of Luxenberg v. Stichman, 2 A D 2d 605, 607; Lightbody v. Russell, 293 N. Y. 492, 496.) An application of these principles to the facts of this case mandates the conclusion that the Commissioner’s actions were eminently reasonable.
What the Commissioner has done is to place a ceiling on nursing home costs. He has found, through his experience, that efficiently run nursing homes will have costs below the regulatory 50% standard that he has promulgated. The petitioner does not challenge this standard or the assumption (based on the Commissioner’s experience) upon which it is founded, but states, however, that his costs are in excess of this amount. Hence, the State must reimburse him — no matter how high these cost figures are.
*115 We cannot accept this argument. The Commissioner has, it seems, made a reasonable and laudable interpretation of the statute so as to not reimburse outlandish costs. The statute itself only requires that the rates be reasonably related to the costs of such services. Thus, it seems implicit in this statute that the costs be reasonable ones.[4] Since there is no contention the 50% standard is erroneous, the Commissioner’s determination should stand.
It seems abundantly clear that the problem presented on this appeal is precisely the situation which the Commissioner is trying to combat. Assuming that petitioner’s operation is efficient, the reason for its higher costs is more than likely because it chose to locate in the high-rent upper east side district. There is nothing in the statute to require a full reimbursement because of petitioner’s predilections for a fashionable neighborhood.
We have on previous occasions approved a standard announced in advance as an aid in the sound administration of a public power. For instance, in Matter of Old Republic Life Ins. Co. v. Wikler (9 N Y 2d 524), the Superintendent of Insurance promulgated certain standard insurance rates pursuant to a statutory power to disapprove rates as unreasonable. That action, which we approved, is analogous to the situation here. The Commissioner of Health has simply announced in advance that certain cost figures will be rejected as unreasonable. Consequently, a clear guideline has been established upon which petitioner or others similarly situated may base their cost structures.
It should be emphasized that there is no taking of property involved here. At issue here are Medicaid reimbursement rates for publicly assisted patients placed in a private profit-seeking nursing home. The rates charged to privately supported patients are not affected. Nor is there any requirement that petitioner accept Medicaid patients at these previously announced rates. If petitioner cannot realize a profit at these rates, he has the choice of either making his operation more efficient or not accepting Medicaid patients. The possible fact that the Commis *116 sioner’s rule adversely affects petitioner’s business is no ground for declaring such rule invalid or unreasonable. (Ringling Bros. v. Department of Labor, 18 Misc 2d 1070.)
Petitioner’s reliance upon Catholic Med. Center v. Rockefeller (305 F. Supp. 1268, affd. 430 F. 2d 1297, app. dsmd. 400 U. S. 931) is misplaced. The Catholic Medical Center case invalidated portions of the 1969 amendment to section 2807 of the Public Health Law which, in effect, placed a freeze upon reimbursement rates given to private hospitals at mid-1969 levels. These provisions were held invalid because of a conflict with provisions in the Social Security Act requiring full reimbursement to these hospitals for their costs. However, the trial court holding therein specifically stated that it would not prevent New York from taking steps to assure that the payments are not in excess of reasonable costs in efficiently run hospitals. (305 F. Supp., at p. 1271.) Thus, this holding would not prevent payments based upon the Commissioner’s unchallenged finding that efficiently run nursing homes have costs below the 50% standard set by him.
Accordingly, the order of the Appellate Division should be reversed and the petition dismissed.
Judges Burke, Scileppi, Bergan and Breitel concur with Judge Jasen; Chief Judge Fuld and Judge Gibson dissent and vote to affirm on the opinion at the Appellate Division.
Order reversed, with costs, and petition dismissed.

. This law was amended as of May 26, 1969, to specify some of the elements of cost to be taken into consideration in setting these rates and to require that they be reasonably related to the efficient production of such services.

. Petitioner makes no challenge to this determination.

. Accordingly, petitioner’s previous reimbursement rate of $24 was increased to the statutory maximum effective April 1, 1969.

. We also note that the Commissioner’s interpretation of the statute has been explicitly approved by the 1969 amendment thereto which requires that the rates be related to the costs of the efficient production of these services.