■ In the Matter of MARYHAVEN CENTER OF HOPE et al., Appellants, v BRIAN WING, as Acting Commissioner of New York State Department of Social Services, et al., Respondents. [674 NYS2d 395] —In a proceeding pursuant to CPLR article 78 to review a maintenance reimbursement rate determination issued by the respondents for the 1996-1997 school year, the petitioners appeal from a judgment of the Supreme Court, Suffolk County (Dunn, J.), entered October 20, 1997, which denied the petition and dismissed the proceeding.

Ordered that the judgment is affirmed, with costs.

Maryhaven Center of Hope (hereinafter Maryhaven) is a not-for-profit organization which operates two programs for severely handicapped children, the 853 Residential School Program (hereinafter the School) and the Children's Residential Project (hereinafter the CRP). The appellants challenge the 1996-1997 maintenance reimbursement rate set by the respondents for the School because it did not authorize reimbursement for additional staff which the appellants contend was required in light of a prior reclassification by the New York State Department of Social Services (hereinafter the DSS) of the School from a Class 4 program to a Class 1 program. However, Social Services Law article 7, title 1, and Mental Hygiene Law, articles 13 and 31, demonstrate that the DSS has no authority to dictate staffing levels of schools for the mentally retarded, such as the School. Moreover, the regulations which do address staffing at the School evidence that the School's staffing levels are subject to the supervision of the Department of Mental Hygiene and that the School was only required to "employ an adequate number of appropriately qualified staff" (14 NYCRR 81.7 [a]). The respondents set forth a detailed explanation of the model budget methodology which was used to establish the challenged maintenance reimburse-

ment rate and which considered, *inter alia*, the prior reclassification of the School. The respondents also explained that the DSS reclassification did not result in an increased maintenance reimbursement rate because the School's actual historical costs adjusted for inflation, also known as "trended" costs, were less than the model budget parameters created by the DSS for the purpose of setting maintenance reimbursement rates. To the extent the rate does not allow Maryhaven to be fully reimbursed for any additional staff it chooses to hire, full reimbursement is not required (*see, Matter of Brooklyn Socy. for Prevention of Cruelty to Children v Blum*, 56 NY2d 909; *Matter of Sigety v Ingraham*, 29 NY2d 110). Pursuant to CPLR 7803 (3), the standard of review of an agency determination, where the agency is not required to conduct a hearing, is whether the determination was arbitrary and capricious (*see, Matter of Pell v Board of Educ.*, 34 NY2d 222; *Matter of Doerrbecker v Saunders*, 229 AD2d 490). Thus, the issue is whether there was a rational basis for the maintenance reimbursement rate set by the respondents. As the respondents provided a rational explanation of how they calculated the School's maintenance reimbursement rate using the model budget methodology, the respondents did not act arbitrarily or capriciously (*see, Matter of Pell v Board of Educ., supra; Matter of Doerrbecker v Saunders, supra*).

Turning now to the appellants' constitutional claims, since the appellants are challenging a prospective reimbursement, the appellants' claim that their due process rights were violated because the maintenance reimbursement rate paid to Maryhaven for children enrolled in the School is less than the rate paid for children enrolled in the CRP is without merit (*see, Matter of Sigety v Ingraham, supra; Hurlbut v Whalen*, 58 AD2d 311; *Oberlander v Perales*, 740 F2d 116; *Andrew H. v Ambach*, 600 F Supp 1271). In addition, as the School and the CRP are funded by different agencies, possess different types of licenses which reflect an intention that they would provide different levels of care to differently-situated children, and the type of license possessed by the CRP dictates that the CRP is subject to stricter operational requirements than the School, there is a rational basis for the difference in the maintenance reimbursement rates (*see, Maresca v Cuomo*, 64 NY2d 242; *New York City Managerial Empls. Assn. v Dinkins*, 807 F Supp 958). Miller, J. P., O'Brien, Pizzuto and Friedmann, JJ., concur.